**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **JOE HAND PROMOTIONS, INC.,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:22-cv-00807-O-BP |
| § | |
| **ONE LOVE NATURAL MYSTIC LLC** § | |
| **d/b/a ONE LOVE LOUNGE,** *et al.*, § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Opposition to Motion for Default Judgment, Declaration, and Memorandum of Law in Opposition to Motion for Default Judgment (ECF Nos. 33-35) filed by Defendant Rajendra Kissoon ("Kissoon"), and Plaintiff's Response and Appendix in Support (ECF Nos. 37, 38). After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **DENY** the request to set aside clerk's entry of default and default judgment.

**I.     BACKGROUND**

This is a satellite piracy case concerning the streaming rights to a television broadcast program and involves violations of the Communications Act of 1934, 47 U.S.C. § 605 (2023). ECF No. 1. Plaintiff, Joe Hand Promotions, Inc. ("Hand"), was the sole and exclusive third-party distributor of commercial closed-circuit television or streaming of the broadcast of the Errol Spence Jr. v. Shawn Porter boxing match telecast on September 28, 2019 ("the program"). ECF No. 1 at 2. According to the complaint, Kissoon is the owner, operator, manager, and lawful agent

of Defendant One Love Natural Mystic LLC ("One Love,"), which owned the lounge where the event at issue took place. *Id.* at 3.

Hand contracts with businesses such as One Love and permits the establishment to stream the program to their patrons in exchange for a sublicense fee. *Id.* at 4. Upon reaching such an agreement, Hand notifies the relevant satellite or cable provider, which grants the establishment business rights and access to the program so that it can stream the event to its patrons on its premises. *Id.* Hand calculates the sublicense fee based on the establishment's occupancy and capacity. *Id.* Unless an establishment has an agreement with Hand, the transmission of the program is scrambled and not available or intended to be available to the general public, including the establishment and its patrons, on the scheduled date of the program. *Id.*

According to Hand, One Love did not have a sublicense agreement to show the Spence/Porter fight. *Id.* at 5. Hand did not grant One Love access to the program. *Id.* However, on the day of the fight, One Love allegedly played it live on multiple televisions inside the establishment for its patron's viewing. *Id.* One Love also published virtual advertisements promoting its offering of the program. *Id.* According to Hand, Kissoon could not have obtained the transmission without taking wrongful actions to intercept, receive, unscramble, and stream the program at the establishment. *Id.* at 6. Kissoon alleges that he rented out the venue to a third party who then charged patrons a $10.00 cover fee on the day of the event. ECF No. 35 at 2. Kissoon received a $500 rental fee and proceeds from food and beverage sales during the program. *Id.*

Hand sought relief from the Court on September 12, 2022, asserting that the actions of One Love, Kissoon individually, and others violated the Communications Act. ECF No. 1. On December 1, 2022, the summons directed to Kissoon was returned executed. ECF No. 14. On January 9, 2023, more than thirty days after the summons was returned, and with no response from

Kissoon, Hand requested the clerk to enter default against him (ECF No. 17), which the clerk entered on January 10, 2023 (EFC No. 19). On January 10, 2023, Hand filed the Motion for Default Judgment and Appendix in Support. ECF Nos. 20, 21. Judge O'Connor granted the Motion and entered final judgment as to Kissoon on March 8, 2023. ECF Nos 29, 30. One week later, Kissoon filed his opposition motion (ECF No. 33), which the Court liberally construes as a request that it vacate the default judgment entered against him.

## II. LEGAL STANDARD

Under Federal Rules of Civil Procedure 55(c), a district court "may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c), 60(b); *Lacy v. Sitel Corp.*, 227 F.3d 290, 291-92 (5th Cir. 2000). The Fifth Circuit has established three factors to consider in deciding a motion to vacate a default judgment: whether (1) "the default was willful," (2) "setting it aside would prejudice the adversary," and (3) "a meritorious defense is presented." *United States v. One Parcel of Real Prop.*, 763 F.2d 181, 183 (5th Cir. 1985). Of these factors, "two can be determinative: a district court may refuse to set aside a default judgment if it finds either that the default was willful or that the defendant failed to present a meritorious defense." *Scott v. Carpanzano*, 556 F. App'x 288, 293-94 (5th Cir. 2014).

"[The Fifth Circuit] has set a high bar for what a party must show to receive relief under Rule 60(b)(1)." *Williamson v. City of Morgan City*, 428 Fed. App'x 356, 357 (5th Cir. 2011) (per curiam). The court of appeals reviews denial of such relief only for abuse of discretion. *Lacy*, 227 F.3d at 292. It reviews any factual determinations underlying the decision for clear error. *Id*.

3

### III. ANALYSIS

#### A. Kissoon did not intentionally fail to respond to the pleadings.

"A finding of willful default ends the inquiry, for when the court finds an intentional failure of responsive pleadings there need be no other finding." *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014). When a defendant's neglect is "at least a partial cause of its failure to respond," the defendant has the "burden to convince the court that its neglect was excusable, rather than willful, by a preponderance of the evidence." *Id.* (citing *Rogers v. Hartford Life & Accident Ins. Co.,* 167 F.3d 933, 939 (5th Cir. 1999); *In re OCA*, 551 F.3d 359, 372 (5th Cir. 2008). Thus, the Court's inquiry focuses on whether Kissoon willfully failed to respond to the complaint within the proper time. *Id.*

Hand sued Kissoon individually and served process on him by leaving the summons and complaint with his estranged wife at their home. ECF Nos. 4, 14. Kissoon contends that he did not timely respond to the complaint because he no longer lived at the address once he separated from his wife, over a year before. ECF No. 34 at 2. He alleges that his failure to respond to the complaint on time was not due to willful intent. *Id.* According to Kissoon, he only learned of the suit during the week of January 3, 2023 when his wife told him that lawsuit papers had been served on him at her house. *Id.* He further alleges that he has been trying to hire a lawyer to represent him since then. *Id.* Hand responds that Kissoon knew about the suit as early as December 2022, and nevertheless did not contact Hand's counsel, file anything with the Court, or even confer on Hand's motion. ECF No. 37 at 6. Instead, he alleges, Kissoon only decided to appear in this case after the entry of final judgment. *Id.*

While Kissoon was slow to appear in this case, even after being notified of its existence, the pleadings do not establish that his failure to respond was a result of intentional, willful conduct

4

and not merely a mistake. *See AAR Supply Chain Inc. v. N & P Enterprises, LLC*, No. 3:16-cv-2973-L, 2017 WL 5626356, *2 (N.D. Tex. Nov. 22, 2017) (holding that a mistake is enough to support a finding of good cause). Additionally, one week after the entry of the default judgment, Kissoon actively sought to get the judgment vacated. ECF Nos. 33-35. Thus, given the Fifth Circuit's preference for judgments on the merits rather than on defaults, the undersigned finds that Hand has not shown that Kissoon willfully failed to respond to the summons and complaint in this case.

> **B.  Hand would not be prejudiced if the Court vacated the entry of default and default judgment.**

The second factor the Court must evaluate in deciding the Motion is whether setting aside the default judgment would prejudice Hand. *One Parcel*, 763 F.2d at 183. "[M]ere delay does not alone constitute prejudice." *Lacy*, 227 F.3d at 293. Additionally, "expected difficulties [the plaintiff] may face if forced to proceed with further litigation" and "requiring a plaintiff to prove his case does not constitute prejudice." *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 122 (5th Cir. 2008). "Rather, the plaintiff must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Lacy*, 227 F.3d at 293.

Kissoon asserts that granting the Motion will not prejudice Hand because almost three years have passed since the event occurred. ECF No. 35 at 7. Hand argues that this case already is in the discovery phase and that it will have to make initial disclosures again if the Court vacates the judgment. ECF No. 37 at 17. It further contends that additional discovery would be difficult because Kissoon has not provided any evidence with this motion or updated contact information on how he can be reached. *Id.*

5

Hand has not shown that vacating the default judgment would prejudice it nor that a delay would cause lost evidence, more difficult discovery, or a greater likelihood of fraud and collusion. *Lacy*, 227 F.3d at 293. Thus, Hand has not met its burden of showing prejudice resulting from an order vacating the entry of default and default judgment.

### C.     Kissoon has not asserted a meritorious defense.

A district court may decline to set aside a default judgment if the defendant "fails to present a meritorious defense sufficient to support a finding on the merits." *Lacy*, 227 F.3d at 293. This generally requires that the defendant provide "definite factual allegations, as opposed to mere legal conclusions, in support of [his] defense." *Jenkens*, 542 F.3d at 122. "A defendant's allegations are meritorious if they contain even a hint of a suggestion which proven at trial, would constitute a complete defense." *Joe Hand Promotions, Inc. v. Thibodeaux's Authentic Cajun Cookin LLC*, No. 3:19-cv-1633-S, 2019 WL 5790112, at *2 (N.D. Tex. 2019); *see also AAR Supply Chain Inc.*, 2017 WL 5626356, at *2; *see also THD Partners, LLC v. JAG Res., Inc.*, No. A-16-CV-849-LY, 2018 WL 3000546, at *3 (W.D. Tex. June 15, 2018), *rec. adopted*, 2018 WL 4343428 (W.D. Tex. Jul. 31, 2018).

Hand alleges that Kissoon "operated, maintained, and controlled the establishment on the night of the program," and further that he was a "member, manager, officer, and/or principal of the entity owning and operating the establishment that night." ECF No. 1 at 3. Hand also contends that Kissoon supervised the activities that night and had "an obvious and direct financial interest." *Id.*

In the Motion, Kissoon does not present any facts or argue the validity of Hand's claim that he was an owner and operator of the establishment with a right to supervise and benefit financially from the activities of the night of the fight. ECF No. 35 at 4-5. Instead, his only defense

is that he rented out the lounge to a customer who paid for the rights to host an event, and that his only role was providing the venue and the television system. ECF No. 35 at 2. He acknowledges that he received $500 for the venue rental, and that the establishment was open to the public, allowing him to make money from food and beverage sales during the event. *Id.* None of these facts, if proven at trial, would "constitute a complete defense." *Joe Hand Promotions, Inc. v. Adame*, No. EP-12-cv-141-KC, 2012 WL 3561367, at *3 (W.D. Tex. Aug. 16, 2012).

"The Communications Act is a strict liability statute." *Joe Hand Promotions, Inc. v. Daddy O's Bar & Grill, LLC,* No. H–11–2493, 2012 WL 3262429, at * 2 (S.D. Tex. Aug. 8, 2012); *J & J Sports Prods., Inc. v. Delgado,* No. 2:10–2517 WBS, 2012 WL 371630, at * 3 (E.D. Cal. Feb. 3, 2012); *see also J & J Sports Prods., Inc. v. Live Oak Cnty. Post No. 6119 Veterans of Foreign Wars,* No. C–08–270, 2009 WL 1437803, at *3 (S.D. Tex. May 20, 2009) ("[V]iolations of sections 553 and 605 need not be knowing."); *Top Rank, Inc. v. Gutierrez,* 236 F. Supp. 2d 637, 648 (W.D. Tex. 2001) ("[Section 553] does not require a knowing violation."). To the extent it is relevant, Kissoon's knowledge and intent only affect the question of damages, not liability. *See Zuffa, LLC, v. Trappey,* No. 11-0006, 2012 WL 1014690, at *4 (W.D. La. Mar. 22, 2012); *see also* 47 U.S.C. § 553(c)(3)(B) (providing that willful violations allow courts to increase the damages award); 47 U.S.C. § 605(e)(3)(C)(ii) (same).

Additionally, Hand sues Kissoon in his individual capacity, and therefore Hand must show that Kissoon "had a right and ability to supervise the violations, as well as an obvious and direct financial interest in the misconduct." *See In re OCA, Inc.*, 551 F.3d at 373; *J&J Sports Prods., Inc. v. Hnos Adame Corp.,* No. 3:15-cv-1386-M, 2017 WL 728311, at *3-4 (N.D. Tex. Jan. 23, 2017), *rec. adopted*, 2017 WL 713682 (N.D. Tex. Feb. 23, 2017). District courts in this and in other circuits considering the issue have held that there is no individual liability if a defendant does not

7

"own, operate or control the bar at the time of the telecast." *Hnos Adame Corp.,* 2017 WL 728311 at *4. Kissoon provides no facts to dispute his role as owner, operator, or manager of the establishment at the time the event was broadcast, and he thus does not present a meritorious defense for Rule 55(c) and 60(b) purposes. *Cf. Clifton,* 2011 WL 4500862, at *4 ("[The defendant] has presented facts that she was not the owner at the time the Program was broadcast. Thus, she has presented facts that 'would constitute a defense.'").

Kissoon has not met his burden to present a meritorious defense to Hand's claim. The lack of a meritorious defense is sufficient to deny the Motion. *Jenkens*, 542 F.3d at 120.

## IV. CONCLUSION

Default judgments are "generally disfavored in the law" and thus "should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement." *Lacy*, 227 F.3d at 292. A Court should resort to a default judgment only in extreme situations. *Lindsey v. Prive Corp.*, 161 F.3d. 886, 893 (5th Cir. 1998); *Rogers*, 167 F.3d at 936. Although Kissoon established that his failure to appear was unintentional and that proceeding at this point would not prejudice Hand, he has not met his burden to show that he has a meritorious defense to Hand's claim. Under applicable legal authorities, this element alone is enough to deny Kissoon's request for relief. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **DENY** the Defendant's Opposition Motion requesting to set aside the default judgment. (ECF No. 33).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for

the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

      **SIGNED** on July 24, 2023.

 

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE